## JOHNSON v. MOORE et al.

No. 15249—Opinion Filed July 7, 1925.

Rehearing Denied Nov. 10, 1925.

(Syllabus.)

Pleading—Cross-Bill—Necessity that Cause of Action Be Germane to Original Controversy.

A cause of action set up in a cross-bill must be germane to the original controversy; and where a defendant seeks to set up new and distinct matter, not maintainable under the provisions of the Code as counterclaim unless such matter is involved in a proper determination of the subject-matter of the original suit, a defendant will be required to litigate it in a separate action.

Error from District Court, Noble County; Claude Duval, Judge.

Action by Norah B. Moore against Petty Johnson and J. M. Taylor. Judgment for defendant Johnson, canceling tax deed and contract, and for defendant Taylor against codefendant Johnson reinstating prior judgment, and Johnson appeals. Reversed and remanded.

W. M. Bowles, for plaintiff in error.

Cress & Tebbe, for defendant in error J. M. Taylor.

RILEY, J. This action was commenced in the district court of Noble county, Okla., on August 21, 1919, by defendant in error, Norah B. Moore, hereinafter mentioned as plaintiff, against plaintiffs in error, Petty Johnson and J. M. Taylor, hereinafter mentioned as defendants, by filing her petition alleging that she was possessed of a tax deed to the north half of the northeast quarter of section 35, township 21 north of range 1 east of Indian Meridian, Noble county, Oklahoma; that J. M. Taylor claimed some right, title or interest therein and that defendant Petty Johnson claimed pos-

session as a lessee of defendant J. M. Taylor; and praying for the quieting of title to said property and a writ of possession. Johnson filed motion to separately state and number, and a demurrer, both of which were by the court overruled. Johnson answered, denying generally, and alleging a tender to the county treasurer of taxes due, in the proper time and manner, pleading the tax deed to be void and ownership and possession of the land in controversy. Johnson further alleged that his codefendant, Taylor, had obtained from him a quitclaim deed and contract relating to the lands in question, but that these instruments were void, being obtained by fraud and without consideration. Johnson prayed that title to the land be quieted in him; that the tax deed be set aside and also the quitclaim deed from defendant Johnson to Taylor be set aside. Plaintiff Moore filed a demurrer to the answer of Johnson, which was overruled, and on June 7, 1921 J. M. Taylor filed his answer and cross-petition, stating that he made no defense to the tax deed of plaintiff Moore, as alleged, or to her title to the land claimed, but in case this issue was decided against plaintiff and in favor of codefendant Johnson, then defendant Taylor claimed superior title to said lands as based upon a quitclaim deed and contract from Johnson, and in the event of this issue being lost to him defendant Taylor claimed right to a judgment against his codefendant, Johnson, by reason of a prior judgment rendered in a case in said court wherein one Lynch was plaintiff and Petty Johnson and Angelia Johnson were defendants, and wherein one Schwint intervened, securing judgment against Petty Johnson and Angelia Johnson, his wife, said judgment being assigned to Moore and from Moore to said Taylor. Taylor prayed in the last alternative that the Schwint judgment be reinstated, declared a lien upon the premises and that the land be sold to satisfy said judgment lien. Johnson filed a demurrer to the cross-petition of Taylor, the same being overruled and exceptions saved. Whereupon Johnson filed a "reply" answer and cross-petition, praying that title be quieted in him, and plaintiff Moore filed a general denial.

The issue thus joined was tried to the court. Upon request the court made the following findings of facts:

"(1) That the defendant Petty Johnson was the homestead entryman of the north half (N.½) of the northeast quarter (N E.¼) of section thirty-five (35) township twenty-one (21) north, of range one (1) east of I. M. in Noble county, Oklahoma, and has ever since been in possession thereof.

"(2) That on or about April 29, 1908, a judgment was entered in the district court of Noble county against said Petty Johnson for something like $1,375.95 with interest thereon at the rate of 12 per cent. per annum, and for attorney fee in sum of $125, and for foreclosure of a mortgage on the above-described land, and in favor of one Schwint.

"That afterwards this judgment was assigned to one S. A. Moore, who on July 10, 1910, obtained the issuance of an order of sale of the above-described property, and the sale thereunder was confirmed by the district court, but this confirmance of sale was set aside by the Supreme Court on the ground that no appraisement of the land had been made.

"(3) Afterwards the said S. A. Moore, who was the husband of the plaintiff in this action, assigned said judgment to the defendant J. M. Taylor, who afterwards had another order of sale issued, and caused said land to be sold on February 14, 1914, the said J. M. Taylor becoming the purchaser thereof, and which sale was confirmed by the district court. From this action the defendant Petty Johnson appealed to the Supreme Court, and on or about October 9, 1917, the Supreme Court affirmed the action of the district court, whereupon Petty Johnson filed a petition for rehearing, which was in 1918 denied; and thereupon the defendant Petty Johnson filed a second petition for rehearing, which was denied at first, but later reconsidered by the Supreme Court and allowed and the mandate affirming the lower court was recalled, and the judgment of the lower court affirming the sale was reversed and the case sent back for further proceedings in accordance with the decision.

"(4) At the time this action was pending in the Supreme Court Mr. H. A. Johnson was attorney for Petty Johnson, and the wife of H. A. Johnson was surety on the appeal or supersedeas bond of Petty Johnson, and prior to the last action of the Supreme Court, Mr. Johnson and his client, then believing that the Supreme Court would likely adhere to its previous decision, and Mr. Johnson being anxious to have the surety relieved of liability on the bond, in the event there should be a liability, but being desirous also that the records and decisions in the case be in accord with his view that the action of the district court confirming the sale was erroneous, induced his client after much persuasion to sign the contract between Petty Johnson and J. M. Taylor which purported to settle and adjust the differences between them, the same being dated March 28 1918, and in which contract it was, among other things, agreed that the said Petty Johnson would deed this land to J. M. Taylor, subject to all taxes and tax assessments, and as a consideration therefor, the defendant J. M. Taylor agreed to confess the then pend-

ing petition for a rehearing in the Supreme Court, whereupon the plaintiff in error would then dismiss the case (appeal). A quitclaim deed to this land was signed by Petty Johnson at same date of the contract conveying the land as provided in the contract, to J. M. Taylor, and left in the custody of H. A. Johnson, attorney for Petty Johnson.

"(5)  The defendant Petty Johnson is and was at that time an aged, uneducated negro man who believed then that the positive result of his failure to sign the contract and deed would be his early ejectment from the land, and at that time his attorney, H. A. Johnson, also felt that their chance to win the suit was slight, but this court finds from the admissions of Mr. H. A. Johnson, as a witness in this case, that he was prompted to induce his client to sign the contract and quitclaim deed by the realization that if the case was affirmed his wife would be liable on the bond, and that the said H. A. Johnson did for these reasons use considerable coercion and undue persuasion (although done in good faith at the time) to induce Petty Johnson to sign the contract and deed. The defendant J. M. Taylor, through his attorney, Mr. Cress, also joined in this undue persuasion, but did not use the extreme measure or language to which Petty Johnson testified.

"And although this contract and deed were turned over to the defendant J. M. Taylor, by H. A. Johnson, it was done without that free will and understanding on the part of Petty Johnson which should accompany the delivery of such instruments in matters of such grave importance.

"(6)  After this contract was signed, for some cause which is not clear from the evidence, Mr. Taylor and his attorney, Mr. Cress, failed to confess the petition for rehearing in the Supreme Court, whereupon H. A. Johnson, attorney for Petty Johnson, became alarmed over the situation and again went before the Supreme Court and argued his last petition for rehearing to the Supreme Court and thereby obtained a favorable decision reversing the district court and setting aside the sale and confirmation thereof. And in this the court finds that the defendant J. M. Taylor did breach this contract, whether intentional or unintentional.

"(7)  The court finds that on July 9, 1919, the county treasurer of Noble county, Oklahoma, issued to Norah B. Moore, a tax deed for the land in question, the same having been sold on November 1, 1915, for the 1914 taxes in the sum of $16.22, the said Noah B. Moore having purchased the tax certificate from one F. E. Reed, who had also paid subsequent taxes on said land as follows: $24.78 for 1915 taxes; $20.84 for 1916 taxes; $21.50 for 1917 taxes.

"The court further finds that although the plaintiff, Norah B. Moore, brought this suit against the defendants Petty Johnson and

J. M. Taylor for the possession of said land under said tax deed, the defendant J. M. Taylor employed plaintiff's attorney to represent him also, and in his answer he claims no defense as against the plaintiff, but specifically admits the sufficiency of the plaintiff's tax deed. The court, therefore, finds as a fact that there is some kind of a mutual interest and arrangement between the plaintiff, Norah B. Moore, and the defendant J. M. Taylor, whereby the defendant J. M. Taylor either purposely allowed a tax deed to be issued against property claimed by him, or else that the plaintiff, Norah B. Moore, is the real party in interest in the crosspetition set up by J. M. Taylor against the defendant Petty Johnson.

"The court further finds from the evidence that prior to the issuance of said tax deed the defendant Petty Johnson and his attorney, H. A. Johnson, for the purpose of redeeming said land from the said tax sale, tendered to the county treasurer of Noble county, Oklahoma, a sufficient amount of money to redeem said land from the tax sale, but that redemption was refused by the county treasurer on the theory perhaps that Petty Johnson had no redeemable interest, but in which theory the county treasurer was mistaken.

"Conclusions of Law

"The court makes the following conclusions of law from the above findings of fact:

"(1)  That the said tax deed issued to Norah B. Moore on July 9, 1919, to the land in question, should be vacated, set aside and held for naught. But that the plaintiff, Norah B. Moore, should have judgment against the defendant Petty Johnson for the amount paid out by her for such taxes, without penalties, to wit, the total sum of $83.34, and as the defendant J. M. Taylor confesses the superiority of the plaintiff's claim as against him, said sum of $83.34 should be made a first lien against the said land.

"(2)  That the quitclaim deed given by Petty Johnson to J. M. Taylor on March 28, 1918, for the said north half of the northeast quarter of section 35, township 21 north, of range one (1) east of I. M. in Noble county, Oklahoma, and the contract signed by the defendants Petty Johnson and J. M. Taylor on the same date, should be vacated, set aside, and held for naught.

"(3)  That any satisfaction of the judgment held by J. M. Taylor against Petty Johnson should be vacated and set aside and all rights of said J. M. Taylor in and to the judgment rendered against Petty Johnson and in favor of R. Schwint on April 29, 1908, in the district court of Noble county, Oklahoma for the sum of $1,375.95, with interest thereon at the rate of 12 per cent. per annum and for $125 attorney fee, and foreclosing a mortgage lien on the said north half of the northeast quarter (N.E.¼) of section

thirty-five (35), township twenty-one (21) north of range one (1) east of I. M. in Noble county, Oklahoma, and afterwards assigned to the said defendant J. M. Taylor, should in all things be at this time reinstated and restored, on this date, **as they existed on March 28, 1918,** just prior to the execution of said contract and quitclaim deed, and a new order of sale issued against said land upon demand of the defendant J. M. Taylor."

The plaintiff in error accepts the findings of fact, but insists that the court committed error in its conclusions of law.

Plaintiff in error filed his motion for new trial, raising questions of law only, which motion was overruled by the trial court and exceptions saved, and this cause is brought to this court on appeal on questions of law only based on the conclusions of law of the trial court, and alleging error therein.

It is contended by the defendant Johnson that the trial court erred in overruling the demurrer and objections of defendant to the cross-petition of his codefendant Taylor. It is again observed that the action commenced is one to quiet title and ejectment, by Norah B. Moore as plaintiff. The defendant Taylor filed his answer and cross-petition, setting out several grounds of relief sought in judgment against his codefendant Johnson, but as to the defense against the petition of plaintiff Moore, summed up his desistance in the following language:

"And this answering defendant, further answering herein, states that he makes no defense against the plaintiff herein, Mrs. S. A. Moore, and does not question the sufficiency and validity of her tax title."

The only issue raised by petition of plaintiff is the legality of a tax deed held by her for the lands in controversy and possession thereof based upon the aforesaid tax deed. Can it be said, then, that the other issues contained in Taylor's answer are germane to the main issue in the original controversy?

The codefendant, Taylor, having confessed judgment in favor of plaintiff, Norah B. Moore, in the only issue raised in her petition, the matters set up relative to a former judgment purchased by the codefendant against Johnson are not germane to the original controversy, and the court cannot, over the objection of Johnson, require him to litigate a controversy between himself and his codefendant in this suit.

The controversy concerning the Schwint judgment was one wherein one of the defendants in that cause, Amgelia Johnson, is dead; the effect of the conclusion of law and judgment rendered in the instant suit is a revival of the former judgment. A suit on the judg-

ment is not germane to the original controversy, and the defendant should have been required to litigate the matter in a separate action. We are of the opinion that the trial court should have sustained the demurrer to the cross-petition of Taylor. American Exchange Bank v. Davidson (Minn.) 72 N. W. 129; Joyce v. Growney et al. (Mo.) 55 S. W. 466.

In this case the plaintiff asserted title to the land in question under a tax deed. The record showed defendant Johnson had given a deed to the lands to defendant Taylor, and in order to establish ownership in himself Johnson alleged facts to show the deed to Taylor void. Defendant Taylor, by his pleadings, showed no claim in the lands as against the plaintiff, but alleges facts to establish a judgment and lien against the lands as against his codefendant Johnson.

A motion to strike would have been proper. Yet a demurrer, as set out in the record as filed by Johnson, was sufficient. The demurrer is as follows:

"Comes now Petty Johnson and demurs to defendant J. M. Taylor's answer and cross-petition, upon the grounds and for the reasons:

"First: That defendant J. M. Taylor is not a party in interest and by his answer waives all right, title, interest and estate in and to the land described in plaintiff's petition.

"Second: Because defendant J. M. Taylor concedes the tax deed executed by the treasurer of Noble county to Norah B. Moore to be valid and binding in so far as he is concerned.

"Third: Because the answer of J. M. Taylor does not state a defense to plaintiff's cause of action.

"Fourth: Because the answer and cross-petition of J. M. Taylor does not state facts sufficient to constitute a cause of action against Petty Johnson, defendant.

"Fifth: Because defendant J. M. Taylor in the above styled action has no capacity to sue and obtain relief against his codefendant Petty Johnson."

In the case of Tracey v. Crepin, 40 Okla. 297, 138 Pac. 142, this court said:

"A cause of action set up in a cross-bill must be germane to the original controversy; and where a defendant seeks to set up new and distinct matter, not maintainable under the provisions of the Code as counterclaim, unless such matter is involved in a proper determination of the subject-matter of the original suit, a defendant will be required to litigate it in a separate action."

Also, it is said:

"The allegations in the cross-petition of

Patterson; if taken as true, were not a defense to the action brought by the Second National Bank of New Hampton, Iowa; nor were the same germane to the issues raised, but raised a controversy solely between Patterson and the Central State Bank of Alva and the Alva Security Bank. * * * The law provides how controversies shall be tried and determined and a defendant has a right to insist that, if he is to be sued, such suit shall be brought in the manner provided by law, and where he has been made a codefendant in an action where the issues in the original suit are foreign to any issue between him and his codefendant, the court cannot, over his objection, require him to litigate a controversy between himself and codefendant, which controversy between himself and codefendant is not germane to the issues in the original action." Patterson v. Central State Bank, 75 Okla. 147, 182 Pac. 678.

In the case of American Exchange Bank v. Davidson (Minn.) 72 N. W. 129, the court said:

"The parts of the answers of these defendants struck out were, in effect, cross-complaints against their codefendant Davidson. Assuming, without so deciding, that these cross-complaints state a cause of action of some kind against the defendant Davidson, still they were rightly struck out, for the supposed cause of action is not germane to the cause of action alleged in the original complaint. It is true that the complaint and cross-complaint refer to the same thing or subject-matter—the lots,—but they are not connected with the same controversy concerning the lots. The cause of action which one defendant may set up against his codefendant by a cross-complaint must be one arising out of, or having reference to, the subject of the original action."

See, also, Cross v. Del Valle et al. (U. S.) 17 Law Ed. 515; Hill v. Frink et al. (Wash.) 40 Pac. 128.

The defendant in error, Moore, has not filed brief, and this controversy is solely between Johnson and Taylor, codefendants.

Having determined that the trial court erred in failure to sustain the demurrer to the cross-petition of defendant Taylor, we need not pass upon other assignments of error. The cause is reversed, with directions to proceed in conformity with the views herein expressed.

NICHOLSON, C. J., and MASON, PHELPS, LESTER, and CLARK, JJ., concur.

Note.—See under (1) 21 C. J. p. 508, § 613.